PASSAIC VALLEY COUNCIL BOY SCOUTS OF AMERICA et al., Respondents-Appellants, *v.* HARTWOOD SYNDICATE, INC., Appellant, and THE HARTWOOD CLUB, Appellant-Respondent.

Third Department, December 18, 1974.

*Wiess & Costa* (*Lawrence E. Lagarenne* and *Jack Lipson* of counsel), for appellant.

*Jacobowitz & Gubits* (*David B. Gubits* of counsel), for appellant-respondent.

*Levine & Levine* (*Lazarus I. Levine* and *F. Walter Bliss* of counsel), for respondents-appellants.

KANE, J. The parties to this litigation each own in fee a portion of the bed of the Beaver Dam Reservoir in the Town of Forestburg, Sullivan County. The plaintiff, Passaic Valley Council Boy Scouts of America (hereinafter known as Council), commenced this action to restrain Hartwood Syndicate, Inc. (hereinafter known as Syndicate) from consummating its threat to drain the waters from the reservoir claiming that, although the dam impounding the waters is located on Council's fee, it has acquired the sole right to regulate the water level. The dispute between the Council and the Hartwood Club (hereinafter known as Club) is over the right to boat, hunt, swim and fish on Council's land and the waters above Council's portion of the reservoir bed; the Club claiming all such rights to the exclusion of the plaintiff fee owner.

The roots of this litigation are embedded in an extraordinary project of local historical significance, the Delaware and Hudson Canal. This canal, from the coal areas at Honesdale, Pennsylvania, to the tide water of the Hudson River at Kingston, New York, was used to transport coal by barge for ultimate use in the City of New York. From 1828 to the middle of the century, traffic steadily increased and the Canal Company prospered so that by 1850 the canal had been deepened and widened to accommodate the increasing demands upon it. As a result of this increase in size, additional sources of water were mandated at the summit level to assure continued operation of the canal. One of these sources was the Beaver Dam Reservoir, a body of water created by the Canal Company when it erected a dam on a tract of its land which impounded the waters of a small stream. The flow of water from this resorvoir could be controlled by a floodgate and its course directed northerly through smaller tributaries into the Neversink River and, ultimately, into the canal at its summit level.

In 1855 the Canal Company conveyed this tract of land, now owned by the Council, to one Wheeler, but reserved to itself, its successors and assigns: "the absolute and unqualified right to occupy so much of the land as they may consider necessary for a reservoir or reservoirs or for any appendages to the same, or for repairing improving enlarging or maintaining the same and to construct a dam or dams for said reservoir purposes and overflow, all the land that they may require for said purposes."

The canal achieved its highest tonnages during the Civil War, but thereafter its use and profits steadily declined until all

operations were finally stopped in 1898 due to railroad competition. Accordingly, in 1899 the Canal Company conveyed all of its: "right, title, interest, claim and possession in and to the Delaware and Hudson Canal, including canal beds, locks and their appurtenances, tow path, rights to divert and use water for canal purposes from the Lackawaxen, Neversink, and Delaware rivers * * * so long as said canal shall be maintained as such, easements, aqueducts and bridges " to the Cornell Steamboat Company. Later that year, that entity sold the canal bed and all of its rights just obtained from the Canal Company to the Delaware Valley and Kingston Railway Company. Since it was clear that the bed of the property would never again be used for canal purposes and since the " rights to direct and use water for canal purposes from the Lackawaxen, Neversink and Delaware Rivers " belonged to the Cornell Steamboat Compay only " so long as said canal shall be maintained as such ", the Canal Company concluded that whatever rights it had surrendered in the 1899 deed to the Steamboat Company reverted back to it. Thereafter, in 1903, the Canal Company quitclaimed to Syndicate's predecessor in title all of its right, title and interest in and to the Beaver Dam Reservoir including, verbatim, all of the rights it had previously reserved in its 1855 deed to Wheeler. It is through this conveyance that the Syndicate claims the right to control the waters of the reservoir as it sees fit, asserting an easement in gross over Council's lands.

The Council, on the other hand, contends that the rights reserved by the Canal Company in its conveyance to Wheeler in 1855 must be construed as an easement appurtenant to the canal proper then in operation and, thus, was extinguished when the canal ceased operations in 1898. The distinction is, of course, fundamental. An easement appurtenant cannot be transferred separately from the tenement to which it attaches while an easement in gross is a separate and alienable right. The determination of this issue requires a construction of the intent of the parties from a reading of the instrument between them and, in the event of any ambiguity, a look at the surrounding circumstances (Real Property Law, § 240, subd. 3; *Wilson* v. *Ford,* 209 N. Y. 186). The proper resolution of this issue, as well as the need for extrinsic evidence and the effect of *Loch Sheldrake Assoc.* v. *Evans* (306 N. Y. 297) upon these particular facts, together with a consideration of the Syndicate's claim of prescriptive rights, are all fully set forth in the well-reasoned and scholarly opinion of the trial court (*Passaic Val. Council, Boy Scouts of Amer.* v. *Hartwood Syndicate,* 75 Misc 2d 1018). As to that

portion of the judgment which: (1) determines plaintiff's title; (2) concludes that the rights reserved to the Canal Company by its 1855 deed to Wheeler constitute easements appurtenant to canal lands; (3) forever enjoins defendants from interfering with the waters of the Beaver Dam Reservoir; and (4) dismisses defendant's various counterclaims, we affirm.

As to another issue, however, we reach a different conclusion. In 1892 and 1895 Wheeler conveyed into the Club's chain of title "the perpetual and exclusive right for its members * * * to hunt and pursue game of all kinds * * * to take fish and to sail and maintain boats upon the waters included in [the Wheeler Tract] ".* The trial court applied the ordinary meaning to the word "exclusive" and adopted the Club's contention that "exclusive right" meant that not even the grantor or his successors could hunt, fish, or boat on their own fee. This interpretation seems unnecessarily restrictive and contrary to its apparent meaning as evidenced by the conduct of the respective owners over the years. This tract was a large undeveloped area with obvious recreational uses. It seems most unlikely that the fee owner would surrender these beneficial uses, reserving only to himself the caretaking responsibilities and expenses of ownership. In the absence of any clear statement to the contrary, we construe the Club's rights to be those it acquired in 1892 and 1895, that is, the common use of such rights together with the fee owner, and with reasonable respect and forbearance for each other's rights in the exercise thereof.

As to the Club's claim that certain of its lands are improperly flooded, we agree with the decision of the trial court that any such determination could not be had upon the record presented. We decide no other issue.

The judgment should be modified, on the law and the facts, by reversing so much thereof as vests exclusive rights to hunt, fish, sail and maintain boats on the Wheeler Tract in the Hartwood Club, and directing that said rights exist coequally with plaintiff and defendant Hartwood Club so long as they are exercised by both parties in such a manner as not to interfere with the reasonable use thereof by the other, and, as so modified, affirmed, without costs.

STALEY, JR., J. P., SWEENEY, MAIN and REYNOLDS, JJ., concur.

Judgment modified, on the law and the facts, by reversing so much thereof as vests exclusive rights to hunt, fish, sail and

---

* Property now owned in fee by the Council.

maintain boats on the Wheeler Tract in the Hartwood Club, and directing that said rights exist coequally with plaintiff and defendant the Hartwood Club so long as they are exercised by both parties in such a manner as not to interfere with the reasonable use thereof by the other, and, as so modified, affirmed, without costs.