ORANGE AND ROCKLAND UTILITIES, INC., et al., Appellants, v PHILWOLD ESTATES, INC., et al., Defendants, and BENJAMIN I. WECHSLER, Respondent.

Third Department, November 1, 1979

## APPEARANCES OF COUNSEL

*Lexow & Jenkins, P. C. (Alfred F. Froh* of counsel), for appellants.

*Oppenheim, Drew & Kane (Stephen L. Oppenheim* of counsel), for respondent.

GREENBLOTT, J.

This is an action in which plaintiffs request a declaration that a clause restricting the use of certain realty expired upon the death of the grantor. In the alternative, plaintiffs seek to extinguish the restriction pursuant to section 1951 of the Real Property Actions and Proceedings Law.

In 1923, William A. Bradford owned in fee a tract of realty in Sullivan County through which the Neversink River passes. By deed dated July 9, 1923, Bradford conveyed various parcels of this tract on the easterly and westerly side of the Neversink River to Alfred J. Crane. Bradford reserved to himself and "his heirs, licensees and assigns forever" the exclusive fishing, hunting and trapping rights to the land he conveyed to Crane. The deed also restricted use of land on the westerly side of the Neversink to development and utilization of the river's water power. The restrictive covenant provided: "It is mutually agreed by the parties hereto that the land on the westerly side of said Neversink River conveyed [by the party of the first part] by the above mentioned deed, is to be used by the party of the second part, his heirs, executors, and assigns solely for the erection of Hydroelectric and generating plants and appurtenances, transmission lines, dams, pen-stocks, conduits, or other structures appurtenant to the proper development and utilization of the water power of the portion of the Neversink River and Bushkill Creek above described or other water power uses and purposes, including houses for employees."

On April 8, 1927 Crane conveyed the restricted property and other parcels to Rockland Light and Power Company, the predecessor of plaintiff Orange and Rockland Utilities, Inc., which, in turn, on December 31, 1971, conveyed the realty in issue to plaintiff Clove Development Corporation, a wholly owned subsidiary of Orange and Rockland Utilities. Through various mesne conveyances and transactions, defendant Wechsler became the present owner of the exclusive hunting and fishing rights which Bradford had reserved to plaintiffs' land.

In 1940 New York City appropriated the flowage rights in the Neversink River and in 1951 the city and Rockland Light and Power (plaintiffs' predecessor) entered into an agreement in which Rockland's claim for damages of $3,000,000 was settled. Rockland conveyed its riparian rights, including those

along the realty at issue herein, to the city in exchange for the right to use a city water supply tunnel.

The theory of plaintiffs' action is that the hydroelectric restriction referred to above was a covenant personal to Bradford and that it expired upon his death in 1934. They contend alternatively that pursuant to section 1951 of the Real Property Actions and Proceedings Law, the restriction should be extinguished because the appropriation by New York City of the flowage rights in the Neversink River rendered the purpose of the restriction incapable of accomplishment. The trial court held that under both theories, the action was barred by the Statute of Limitations, and that even if the statute had not run, plaintiffs were foreclosed from relief under the doctrine of laches.

In holding that the Statute of Limitations barred this action, the trial court relied upon the rule that unlike an owner in possession, an owner not in actual possession must commence an action to remove a cloud on title within the applicable time period (e.g., *Ford v Clendenin,* 215 NY 10, 17). We think, however, that the court's reliance on this rule is misplaced.

It is true that although an owner who is in possession of real property need not comply with the statute in an action to discharge an incumbrance on his title, "[a] person claiming title to real property but not in possession thereof must act affirmatively and within the time provided by the statute" *(Ford v Clendenin, supra,* p 17). Moreover, "[w]here a person who claims to own real property which is in the possession of another seeks in an action in equity to obtain a judgment which will subsequently enable him to obtain possession thereof, every reason which can exist in any case for diligence on the part of the person making a claim in asserting the same is applicable" (215 NY 10, 17). These principles, however, have no application to this case before us.

Significantly, the cases in which the rule has been invoked have involved actions to oust from possession a person already in possession of realty or to exclude one claiming an interest therein. For example, in the leading case of *Ford v Clendenin (supra),* the court upheld application of the rule to bar an action to regain possession where the property was in possession of and held by another under title as a purchaser at a judicial sale. Another example is *Miner v Beekman* (50 NY 337, 344), where the court explained that the action of the

plaintiff, who claimed to be owner of the property but was out of possession, would be barred if it were determined upon a new trial that the defendants, who claimed under deeds in fee, had been in possession for the statutory period. In *Gifford v Whittemore* (4 AD2d 379), this court explained that the statute would have begun to run against the plaintiffs, who sought an adjudication vesting legal title in them as against the defendants, if it were determined that the plaintiffs were not in possession.

Turning to the case at bar, there is no dispute that plaintiffs are the *record owner* in fee of the realty in issue. Unlike the cases discussed above, this is neither an action to recover possession nor one to exclude defendant from exercising his rights to the land. There is here no dispute as to who is in possession. Plaintiffs, by virtue of their deed, are presumptively entitled to possession (cf. Real Property Actions and Proceedings Law, § 311) and defendant's hunting and fishing interest, whether labeled an easement in gross or a profit in gross (see *Passaic Val. Council, Boy Scouts of Amer. v Hartwood Syndicate*, 75 Misc 2d 1018, 1022, mod 46 AD2d 247, mod 39 NY2d 1022), is incorporeal or nonpossessory in nature (see *Nellis v Munson*, 108 NY 453). There is no showing that defendant or anyone has ever used or made claim to the subject realty in a manner adverse to plaintiffs' ownership. To the contrary, defendant's use of the land has been entirely consistent with the reservation clause inserted in the 1923 deed by Bradford. Other than the hydroelectric restriction and the reservation of the hunting and fishing rights, the record contains no indication whatsoever that plaintiffs did not possess full ownership rights.

■ Thus, the rationale behind the rule relied upon by the trial court—to encourage diligence on the part of a person who claims to own land in the possession of another and who seeks to oust that person from possession or some other interest in the land—simply has no application where, as here, the plaintiff is the record owner of the realty, does not seek to exclude the defendant from an interest therein, and merely seeks to remove a cloud upon title. Under such circumstances, moreover, it was entirely within plaintiffs' prerogative to permit the land to remain subject to the restrictive covenant, and it was, therefore, unnecessary for them to timely seek the aid of equity to remove the restriction. We conclude, then, that plaintiffs, as the record owners of the fee,

have a continuing right to remove the restriction at any time during its existence and the Statute of Limitations does not foreclose such relief while the restriction continues to exist.

■ Next, assuming *arguendo* that laches is applicable to this action, we disagree with the trial court's conclusion that the doctrine also bars this action. Whether the doctrine is applicable depends on the facts of each case *(Groesbeck v Morgan, 206 NY 385, 389)*, and a significant factor is whether the plaintiff has inexcusably delayed in asserting his rights, while to his knowledge the opposing party has changed his position to his irreversible detriment *(Groesbeck v Morgan, supra; Calhoun v Millard, 121 NY 69, 82-83)*. Here, the record contains no evidence that plaintiffs had any knowledge, notice or reason to believe that defendant Wechsler was entering into a transaction in 1968 involving the hunting and fishing rights and which involved a change of position on his part. Without such knowledge or notice, we conclude that plaintiffs' inactivity does not justify invocation of the doctrine, especially in view of the complete absence of any adverse use of plaintiffs' land.

■ Although the trial court did not reach the merits, where as here, the evidence is complete and, accordingly, sufficient as a matter of law to support a dispositive determination, it is within the power of this court in a nonjury case to grant the judgment which upon the evidence should have been granted by the trial court *(Brooks v State of New York, 68 AD2d 943; Shipman v Words of Power Missionary Enterprises, 54 AD2d 1052; De Mayo v Yates Realty Corp., 35 AD2d 700, affd 28 NY2d 894)*.

■ Turning then to the merits, we reject plaintiffs' initial position that the restriction was a covenant personal to Bradford and that it expired upon his death in 1934. Whether a covenant is real and runs with the land or is personal to the grantor is determined by: (1) the intention of the parties; (2) whether the covenant "touches" or "concerns" the land; and (3) whether there is a privity of estate between the person claiming the benefit and the person carrying the burden of the covenant *(Neponsit Prop. Owners' Assn. v Emigrant Ind. Sav. Bank, 278 NY 248, 255)*. Of these three considerations, the only question in this case concerns the intent of the parties, which must be determined from the instrument and, if necessary, by looking also to the surrounding circumstances *(Booth v Knipe, 225 NY 390, 396)*. The deed does not state either that

the covenant is to run with the land or that it runs to the benefit of Bradford's heirs, successors or assigns, "but the use or failure to use those familiar phrases does not necessarily determine the nature of the covenant" *(Silverstein v Shell Oil Co.,* 40 AD2d 34, 36, affd 33 NY2d 950). Here, significantly, the deed from Bradford to Crane expressly recites that Crane, "his heirs, executors, and assigns" agreed to use the land at issue solely for hydroelectric purposes. Moreover, Bradford retains adjacent land which presumably would benefit from the restriction. We conclude, therefore, that the parties intended the covenant to run with the land and that, therefore, it did not expire upon Bradford's death.

■ However, we think that the covenant should be extinguished under subdivision 2 of section 1951 of the Real Property Actions and Proceedings Law. That section provides that a restriction may be adjudged unenforceable where the restriction is of "no actual and substantial benefit" to the person seeking its enforcement because "by reason of changed conditions or other cause, its purpose is not capable of accomplishment". Since the City of New York has appropriated the flowage rights of the Neversink River along the realty at issue herein, the purpose of the restriction is admittedly not capable of accomplishment and is, therefore, of no actual and substantial benefit.

Defendant argues, however, that the restriction does benefit him in that its continued existence will insure that the realty will remain in its natural state, thereby enhancing his hunting and fishing rights. This basically presents a problem of balancing the equities *(Clintwood Manor v Adams,* 29 AD2d 278, 279, affd 24 NY2d 759; see *Fanning v Grosfent,* 58 AD2d 366, 367) and, in our view, the equities favor plaintiffs. The policy of the law is to favor the free and unobstructed use of realty *(Huggins v Castle Estates,* 36 NY2d 427), particularly where, as here, a restrictive covenant is wholly incapable of accomplishment by reason of changed conditions. The manifest purpose of the restriction was to encourage development of hydroelectric power, and enforcing a restriction no longer capable of accomplishment would in effect render the land unusable and amount to a total restriction on its use. Such a result, in our view, would violate public policy. Additionally, plaintiffs do not seek to prohibit defendant from exercising his hunting and fishing rights to the land, and an adjudication that the restriction is unenforceable, would not deprive defen-

dant of his rights to the land; he will still be able to enjoy them. Thus, plaintiffs are entitled to a declaration that the restriction is unenforceable.

Subdivision 2 of section 1951 also provides that a restriction adjudged unenforceable shall be "completely extinguished" upon payment of damages, if any, which the person entitled to enforce the covenant would sustain from the extinguishment of the restriction. We conclude that damages at this point in time cannot be ascertained since they would be speculative. Defendant has the right to hunt and fish to the same extent as if the restriction were in existence, and, if he suffers injury in the future, he may bring an appropriate action to protect his interest in the land.

The judgment should be reversed, on the law and the facts, without costs, the complaint reinstated, and the judgment directed to be entered in favor of plaintiffs extinguishing the restrictive covenant contained in the deed dated July 9, 1923, without prejudice to the right of defendant Wechsler to commence an appropriate action if he should, in the future, sustain damages as a result of the extinguishment of the restrictive convenant.

MAHONEY, P. J., SWEENEY, KANE and MAIN, JJ., concur.

Judgment reversed, on the law and the facts, without costs, complaint reinstated, and judgment directed to be entered in favor of plaintiffs extinguishing the restrictive covenant contained in the deed dated July 9, 1923, without prejudice to the right of defendant Wechsler to commence an appropriate action if he should, in the future, sustain damages as a result of the extinguishment of the restrictive covenant.