■ STONEGATE FAMILY HOLDINGS, INC., Appellant, v REVOLUTIONARY TRAILS, INC., BOY SCOUTS OF AMERICA, Formerly Known as BOY SCOUTS OF AMERICA, LANDS OF THE ONEIDAS COUNCIL, INC. and Another, et al., Respondents. [900 NYS2d 494]—

Peters, J. Appeals (1) from an order of the Supreme Court (Aulisi, J.), entered August 29, 2008 in Hamilton County, which, among other things, granted a motion by defendant Revolutionary Trails, Inc., Boy Scouts of America for a protective order, and (2) from an order of said court, entered July 10, 2009 in Hamilton County, which, among other things, granted defendants' motion for summary judgment dismissing the complaint.

Defendant Revolutionary Trails, Inc., Boy Scouts of America (hereinafter the Boy Scouts) is the owner of approximately 5,500 acres of land in the Town of Long Lake, Hamilton County, which it acquired by deeds from Amandus Watts in July 1963. At the same time, Watts also granted the Boy Scouts a permanent right-of-way over a road for "full and complete right of ingress and egress to and from" the property. In a separate agreement between the Boy Scouts and Watts executed on the same day as the conveyance, the parties agreed that these conveyances had been made "upon the express condition that the lands thereby conveyed shall be used and utilized as an outdoor camp and recreation park for members of [the Boy Scouts] and organizations allied or affiliated therewith . . . and in default thereof or upon breach of the condition aforesaid the lands so conveyed shall revert to [Watts], his assigns and legal representatives, provided however, that this condition shall . . . in no event . . . extend beyond thirty-five years from the date hereof."

In 1959, four years prior to his conveyance to the Boy Scouts, Watts entered into an agreement with adjoining landowners

creating a right-of-way over lands then owned by Watts, which are now owned by the Boy Scouts and plaintiff. That agreement provided that, "until the said roadway over which the easements are hereby granted shall become a public, state, county or town road, the same shall be and remain a private road for the exclusive use . . . of the parties hereto and their grantees of the premises and property to which said easements are appurtenant." The agreement further provided that, until the actual dedication of the road to a proper public authority, "no member of the general public shall have any right to use the lands of the parties hereto or any part thereof."

In November 2002, the Boy Scouts sold a conservation easement in perpetuity to defendant State of New York (see ECL 49-0303 [1]), which permits public use and recreation on the Boy Scouts' property for 10 months of the year and allows the public to access the property via a portion of the right-of-way that traverses plaintiff's land.[1] In June 2005, plaintiff commenced this action against defendants for declaratory and injunctive relief alleging, as relevant here, that the 1963 agreement forever restricts the Boy Scouts' use of the property to scouting activities (first cause of action), that the Boy Scouts could not sell or convey access over the private right-of-way while retaining fee ownership of the land (second cause of action), and that the State's use of the easement impermissibly converted the private right-of-way into a public right-of-way (third cause of action).

In an attempt to establish a violation of the use restriction contained in the 1963 agreement, plaintiff demanded production of, among other things, documents and information dating back to 1963 relating to mining and/or the removal of any other mineral or natural product from the Boy Scouts' property. Supreme Court granted the Boy Scouts' motion for a protective order, concluding that the use restriction contained in that agreement was a condition subsequent that could only be enforced by the creator or its heirs. Subsequently, the Boy Scouts moved for summary judgment dismissing the complaint, in which the State joined, and plaintiff cross-moved for partial summary judgment.

Reiterating its prior determination that the use restriction contained in the 1963 agreement was a condition subsequent, Supreme Court granted defendants' motion dismissing plaintiff's first cause of action. The court then went on to dismiss plaintiff's second and third causes of action, concluding that the

---

1. The conservation easement reserved to the Boy Scouts a right of exclusive access each year during the months of July and August.

1959 agreement did not prohibit the State, as holder of the con-servation easement, from permitting public invitees to traverse the right-of-way. Plaintiff now appeals from both the protective order and the order dismissing the complaint.

Supreme Court properly dismissed plaintiff's first cause of ac-tion based on violations of the 1963 agreement. Plaintiff contends that the use restriction contained in the agreement applies in perpetuity and that only the reversionary clause expired 35 years later, in 1998. Such a construction, however, conflicts with the clear language of the 1963 agreement, which plainly indicates that the 35-year expiration date applies to the "condition"—that the Boy Scouts use the property as an out-door camp and recreation park—not simply the reversionary clause. Since the use restriction expired in 1998, the Boy Scouts' conveyance of the conservation easement to the State in 2002 did not violate the 1963 agreement.

To the extent that plaintiff claimed a pre-1998 violation of the 1963 agreement, Supreme Court correctly determined that the use restriction constituted a condition subsequent, as op-posed to a covenant, that could not be enforced by plaintiff. Whether the language used in the agreement amounted to a covenant or a condition subsequent is dependent upon the par-ties' intent, which "is drawn from the governing instrument itself and from the particular language selected to reflect the goals and understandings of the parties" (*Suffolk Bus. Ctr. v Applied Digital Data Sys.*, 78 NY2d 383, 388 [1991]; see Real Property Law § 240 [3]; *Stratis v Doyle*, 176 AD2d 1096, 1098 [1991]).

Here, despite the use of both the words "covenant" and "condition," the 1963 agreement contains the "effective formulae" for creation of a condition subsequent (*Fausett v Guisewhite*, 16 AD2d 82, 87 [1962] [internal quotation marks omitted]; see Restatement [First] of Property § 45, Comments *l*, *m*, Illustration 9; see e.g. *Schulman v Ellenville Elec. Co.*, 152 Misc 843, 843-844 [1934], *affd* 248 App Div 662 [1936]) and reserves to the grantor the right of reacquisition, which "is one of the clearest and strongest manifestations supporting a find-ing of intent to create a future interest on a condition subse-quent" (*Suffolk Bus. Ctr. v Applied Digital Data Sys.*, 78 NY2d at 388-389; see *Trustees of Union Coll. v City of New York*, 173 NY 38, 41-42 [1903]; *McAndrew v Lanphear*, 280 App Div 6, 9 [1952]).[2] In our view, the use restriction in the 1963 agreement clearly constitutes a condition subsequent. Since a condition

---

**2.** Also indicative of an intent to create a condition subsequent is the fact that the grant made the continued enjoyment of the property dependent on

subsequent was not assignable, devisable or descendible under the common law at the time the 1963 agreement was made (*see United Methodist Church in W. Sand Lake v Dobbins*, 48 AD2d 485, 486 [1975]; *Fausett v Guisewhite*, 16 AD2d at 87), and the provisions of EPTL 6-5.1 altering this rule are inapplicable because Watts was not living at the time of the statute's effective date (*see* EPTL 1-1.5; *United Methodist Church in W. Sand Lake v Dobbins*, 48 AD2d at 486), it cannot be enforced by plaintiff.[3] For these reasons, Supreme Court properly dismissed plaintiff's first cause of action[4] and granted the Boy Scouts' application for a protective order.

Plaintiff next contends that the Boy Scouts' transfer of the conservation easement to the State, which permits members of the public to use a roadway across plaintiff's land to access the Boy Scouts' property, violates the 1959 agreement. As previously stated, the 1959 agreement provides that the roadway over which the right-of-way was granted "shall be and remain a private road for the exclusive use" of the parties to that agreement "and their grantees of the premises and property" to which the right-of-way is appurtenant. Plaintiff contends that the State is not a "grantee of the premises and property" at issue and that, by permitting the public to use the roadway across its land to access the Boy Scouts' property, the conservation easement impermissibly enlarged the scope of the easement and, furthermore, converted the private right-of-way into a public right-of-way. We address these arguments in turn.

First, although the Boy Scouts retained fee title of the property, the conservation easement here provides a perpetual right in the property, including the right to enter and use the land for

the performance of a certain stipulation (*see Suffolk Bus. Ctr. v Applied Digital Data Sys.*, 78 NY2d at 395 [Kaye, J., dissenting]; *Munro v Syracuse, Lake Shore & N. R.R. Co.*, 200 NY 224, 230 [1910]).

3. Even if the use restriction could be enforced by plaintiff, such a claim could only be brought pursuant RPAPL 1953 and would be barred due to the expiration of the statute of limitations. On the latter point, an action based upon a claim of reverter or breach of a condition subsequent must be commenced within 10 years after "the occurrence of the reverter or the first occurrence of the breach" (RPAPL 612 [1]). Inasmuch as plaintiff asserts that the Boy Scouts violated the use restriction "no later than 1993" by permitting mining on its land, and this action was commenced in 2005, a claim for breach of that condition subsequent would now be time-barred (*see People v Avilas, Inc.*, 29 AD3d 764, 765 [2006]).

4. As plaintiff did not submit any proof on the summary judgment motion that would have changed the result of Supreme Court's prior finding that the use restriction constituted a condition subsequent that plaintiff could not enforce, the court did not err in adhering to that determination in dismissing the first cause of action.

10 months of the year, as compared to a mere right to traverse the roadway. Under these circumstances, the nature and scope of the State's rights under the conservation easement—which is defined as an "interest in real property" (ECL 49-0303 [1])— are such that it is equivalent to a transfer of a freehold estate in the land (*see Fischer v Zepa Consulting*, 95 NY2d 66, 71 [2000]). Thus, we find that the State was a "grantee" of an interest in the "premises and property" within the meaning of the 1959 agreement. In so finding, we reject plaintiff's argument that the Boy Scouts could not transfer its easement rights to the State while retaining a fee interest in the property. Conservation easements are of a character wholly distinct from the easements traditionally recognized at common law and are excepted from many of the defenses that would defeat a common-law easement, including that it be appurtenant to an interest in real property (*see* ECL 49-0305 [5]).

We next address the scope of the easement—specifically, whether the right conveyed to the State carries with it the right to open up the right-of-way to public invitees. "The extent and nature of an easement must be determined by the language contained in the grant, aided where necessary by any circumstances tending to manifest the intent of the parties" (*Hopper v Friery*, 260 AD2d 964, 966 [1999] [citations omitted]; *accord Leaman v McNamee*, 58 AD3d 918, 919 [2009]). The terms of such grant are to be construed most favorably to the grantee in ascertaining the extent of the easement (*see Missionary Socy. of Salesian Congregation v Evrotas*, 256 NY 86, 89 [1931]; *Wechsler v People*, 13 AD3d 941, 943 [2004]; *Seide v Glickman*, 295 AD2d 494, 495 [2002]).

Here, the clear intent of the 1959 agreement was to create for the parties a right of ingress and egress to their respective properties and, in our view, to preclude any party thereto from making the "private" road a "public" road in the legal sense. The parties to the agreement acknowledged that a public road would be mutually beneficial and agreed to cooperate toward the goal of the roadway becoming a public road by dedication with mutual consent, rather than by public use. We simply cannot agree with plaintiff's contention that, by allowing the general public to traverse the roadway in order to gain access to the property, defendants have impermissibly converted the private right-of-way into a public right-of-way. A private road can be converted to a public road through acquisition by eminent domain (*see* Highway Law §§ 29, 30, 118-122) or, as specifically contemplated in the 1959 agreement, by dedication of the land to a municipality (*see* Highway Law § 171). The language in the

agreement that the roadway over which the right-of-way was granted "shall be and remain a private road" "does not restrict the nature or frequency of [the State's] use by . . . its employees, invitees and licensees" (*Inter Community Mem. Hosp. Bldg. Fund v Brown*, 9 Misc 2d 202, 204-205 [1957]; *compare Byrne v Village of Larchmont*, 234 AD2d 250, 250-252 [1996]). In that regard, we note that the State is using and permitting access over the right-of-way not in its governmental or municipal capacity, but as the private holder of the right-of-way and an interest in the land.

Any other construction of the challenged easement would prohibit the other easement holders from allowing *any* member of the general public—including their licensees and invitees—to use the right-of-way to gain access to that party's own property. Such an interpretation is "unnecessarily restrictive and contrary to its apparent meaning as evidenced by the conduct of the respective owners over the years" (*Passaic Val. Council Boy Scouts of Am. v Hartwood Syndicate*, 46 AD2d 247, 250 [1974]). At the time of the 1959 agreement, all of the property at issue was owned by Watts, who subsequently conveyed separate parcels of it to plaintiff, the Boy Scouts and others. It seems highly unlikely that Watts intended to prevent himself from allowing members of the public to use other portions of his own land. Moreover, for many years both plaintiff and the Boy Scouts have opened up the right-of-way to their invitees to access their respective properties. Thus, we conclude that members of the public, as invitees of the State through its conservation easement, can permissibly use the right-of-way to access the Boy Scouts' property without violating the spirit and intent of the 1959 agreement.

Finally, Supreme Court dismissed the complaint, but did not issue a declaration in this partial declaratory judgment action as was required (*see* CPLR 3001). We therefore declare that the Boy Scouts' property is no longer restricted to scouting purposes, that the Boy Scouts' conveyance of the conservation easement to the State was valid and that the State may allow the public to access the property over the right-of-way pursuant to the conservation easement.

Mercure, J.P., Rose, Stein and McCarthy, JJ., concur. Ordered that the order entered August 29, 2008 is affirmed, without costs. Ordered that the order entered July 10, 2009 is modified, on the law, without costs, by declaring that the property of defendant Revolutionary Trails, Inc., Boy Scouts of America is no longer restricted to scouting purposes, that the Boy Scouts' conveyance of the conservation easement to defendant State of

New York was valid and that the State may invite members of the public to access the property over the right-of-way pursuant to the conservation easement, and, as so modified, affirmed.