Matter of Darwak v City of New York (2020 NY Slip Op 06998)





Matter of Darwak v City of New York


2020 NY Slip Op 06998


Decided on November 25, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 25, 2020

529840

[*1]In the Matter of John J. Darwak et al., Appellants,
v
City of New York et al., Respondents, et al., Respondent.

Calendar Date: October 16, 2020

Before: Lynch, J.P., Mulvey, Devine, Pritzker and Colangelo, JJ.


John J. Darwak, Margaretville, appellant pro se, and for Virginia M. Darwak, appellant.
James E. Johnson, Corporation Counsel, New York City (Amy McCamphill of counsel), for respondents.



Mulvey, J.
Appeal from a judgment of the Supreme Court (Northrup Jr., J.), entered July 16, 2019 in Delaware County, which, among other things, dismissed petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review a determination of respondent New York City Department of Environmental Protection denying petitioners' request for [*2]permission to construct a storage shed on a portion of their property subject to a conservation easement.
Petitioners own approximately 403 acres of undeveloped land in Delaware County, of which 242 acres are committed to forest crops and 75 acres are farmed. Petitioners also own a small contiguous parcel that contains their residence and a barn. In September 2017, petitioners granted respondent City of New York a conservation easement that provides the City a perpetual easement on approximately 400 acres of petitioners' land. In exchange for the easement, petitioners received $927,040 and the City is required to pay property taxes on the portion of the land covered by the easement. Under an article entitled "Purpose," the easement provides that it was "granted for the purpose of limiting development and disturbance of the [e]asement [p]roperty[,] preventing pollution, and protecting any portion of the City's water supply system, including its reservoirs and their tributaries." To effectuate this purpose, the easement contains article 4, entitled "Restricted Uses," that, among other things, requires petitioners to obtain prior approval from the City before erecting any accessory structure, such as a shed, that exceeds 1,000 square feet in surface area or is located within 200 feet of a watercourse. The easement clarifies that most of its restrictions do not apply in two building envelopes contained on the property, totaling approximately 15 acres.
In September 2018, petitioners submitted a request to respondent New York City Department of Environmental Protection (hereinafter DEP) seeking approval to build, within the confines of the easement but not within either building envelope, a storage shed that would be 1,800 square feet in size and located 125 feet from a watercourse. DEP denied the request because the proposed shed was not consistent with the protective purpose of the easement, as both its dimensions and location were inconsistent with the easement's restrictions.
Petitioners commenced this action seeking a declaration that all of the restricted uses set forth in the easement that are subject to prior notice and approval are permitted uses that are in harmony with the general conservation plan and will not adversely affect said plan. Petitioners further sought to annul DEP's denial of their request to build the shed. The City and DEP (hereinafter collectively referred to as respondents) moved to dismiss the complaint on the grounds that petitioners failed to state a cause of action, and that the denial was reasonable. Petitioners cross-moved for summary judgment.
Supreme Court converted this matter into a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment. The court denied respondents' motion to dismiss but, after determining that only a question of law was presented regarding the requested declaration and such a question of law could be decided on summary judgment, concluded that petitioners were not entitled to a declaration. The court further found that DEP's denial of petitioners' request was supported by a rational basis in that the setback and size restrictions were consistent with the easement's purpose of preserving water quality. Thus, the court dismissed the converted petition/complaint on the merits. Petitioners appeal.
We agree with Supreme Court that petitioners were not entitled to their requested declaration. "A conservation easement should be interpreted so as to give effect to the intent of the parties as expressed by the language employed" (Orange County Land Trust, Inc. v Tamira Amelia Farm, LLC, 141 AD3d 632, 633 [2016] [citations omitted], lv denied 28 NY3d 915 [2017]; see Real Property Law § 240 [3]; Stonegate Family Holdings, Inc. v Revolutionary Trails, Inc., Boy Scouts of Am., 73 AD3d 1257, 1261 [2010], lv denied 15 NY3d 715 [2010]; Redwood Constr. Corp. v Doornbosch, 248 AD2d 698, 699 [1998]). If there is any doubt as to the extent or scope of an easement, "[t]he terms of such grant are to be construed most favorably to the grantee," which in this case is the City (Stonegate Family Holdings, Inc. v Revolutionary Trails, Inc., Boy Scouts of Am., 73 AD3d at 1261; see Missionary Socy. of Salesian Congregation v Evrotas, 256 NY 86, 89 [1931]). The article of the easement entitled "Construction" states that the "[e]asement shall be liberally construed to give the fullest effect to the purpose of this [e]asement and the policy and purpose of [ECL] [a]rticle 49," and that, if any provision is deemed ambiguous, it should be interpreted consistent with the purpose of the easement.
As noted above, the expressly stated purpose of the easement is to limit development on and disturbance of the property, prevent pollution and protect the City's water supply system. As for the policy and purpose of ECL article 49, petitioners — presumably because they want to store agricultural equipment in the proposed shed — focus on statutory language regarding "the preservation, development and improvement of agricultural and forest lands" (ECL 49-0301). However, in reviewing the statutorily established policy and purpose of conservation easements, petitioners selectively refer to only a part of the list of activities intended to "implement the state policy of conserving, preserving and protecting its environmental assets and natural and man-made resources" (ECL 49-0301). Not all of the allowable statutory purposes will be, or need be, addressed in every conservation easement; indeed, a particular conservation easement will often be drafted and entered to address a particular environmental concern relating to the property at issue (compare Orange County Land Trust, Inc. v Tamira Amelia Farm, LLC, 141 AD3d at 633). Thus, the proper focus should be on the narrower purpose stated in the easement itself, rather than on all of the possible purposes for such an easement that are provided for in the statute.
To further the easement's goal of protecting the City's water supply system, article 4 of the easement discusses restricted uses. Section 4.2 provides, as relevant here, that construction of structures and impervious surfaces on the easement property "is prohibited except that" certain activities may be conducted without the City's prior notice or approval, other activities may be conducted with prior notice but without approval, and still other activities may be conducted only after prior notice and approval. The last category, requiring notice and approval, includes the construction of an accessory structure (such as a shed) exceeding 1,000 square feet of surface area, or the construction of an accessory structure within 200 feet of a watercourse. Hence, the easement's plain language states that these specific activities are generally prohibited, but they may be allowed as an exception to the general rule only after prior notice to and approval from the City.
Nevertheless, petitioners sought a declaration that activities included in this section — as well as six other sections using similar language, all contained under article 4 entitled "Restricted Uses" — "are [*3]permitted uses in harmony with the purpose" of the easement, will not adversely affect the easement's plan and are consistent with the easement's purpose even though not allowed as of right. This request is contrary to logic and to the easement's plain language. Rather than being permitted uses in harmony with the easement's purpose but simply subject to some precondition of approval, the uses at issue are expressly referred to as "[r]estricted" and "prohibited," subject to exceptions that would allow such uses. The exceptions are graduated, from not requiring any notice or approval for some activities that are least likely to affect the water system, to requiring prior notice and approval for activities most likely to produce some deleterious effect. Thus, we disagree with petitioners' interpretation of the easement. Due to the complicated nature of the requested declaration and the multiple sections of the easement involved, we decline to issue a declaration of any kind (see CPLR 3001).
Turning to the CPLR article 78 portion of this matter, the substantial evidence standard is inapplicable here, as that standard applies where a determination is made following a hearing required by law (see CPLR 7803 [4]). Under the proper standard, petitioners bore the burden of establishing that DEP's determination lacked a rational basis or was arbitrary and capricious (see CPLR 7803 [3]; Matter of Kittle v D'Amico, 141 AD3d 991, 992-993 [2016], lv denied 28 NY3d 911 [2017]; Matter of Vataksi v Environmental Control Bd., 107 AD3d 905, 906 [2013]). Pursuant to the easement, respondents were required to "respond reasonably to all [r]equests" for prior approval. In its denial letter, DEP stated that petitioners' proposed shed was 80% larger than the square footage that would be allowed without approval pursuant to the easement, and the shed would also be located entirely within the 200-foot stream setback. Considering that the proposal contravened both the size and location limits on new accessory structures, DEP concluded that "[t]he construction of such a structure in the vicinity of a significant watercourse is not acceptable." DEP explained that the easement achieves its protective purpose in part by establishing broad setbacks from watercourses and prohibiting construction; the easement contains exceptions for moderately sized buildings or activity within the two building envelopes — which were created with the intent to permit petitioners to construct and use buildings within the easement property that would otherwise be restricted by the terms of the agreement — and the parties retained some flexibility through the City's discretionary approval.
DEP further noted that petitioners had options for constructing a shed, including redesigning the shed to reduce its size and relocate it further back from the stream, or building it in areas not subject to the easement, such as within either building envelope or on the parcel containing petitioners' residence and barn. Moreover, in this proceeding, respondents asserted that the benefits of their conservation easement program come from the aggregated effects of many small parcels, so demonstrating the precise impact to water quality from any individual activity would be time-consuming, costly and difficult. For those reasons, respondents negotiated easements that create a more flexible structure by categorically allowing activities with a lower likelihood of impacting water quality and generally disallowing categories of activities known to have a higher likelihood, such as building large structures close to watercourses. As respondents provided a reasonable explanation for denying petitioners' request, the determination was not arbitrary or capricious. Hence, Supreme Court properly dismissed the proceeding.
We have considered petitioners' remaining contentions and find them to be without merit.
Lynch, J.P., Devine, Pritzker and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed, without costs.