WENDELL TERRACE APTS., Country Estates Associates, Fulton Ave. Associates, Alvin & Rose Benjamin, and Cathedral Realty Associates, Plaintiffs,

v.

Yvonee SCRUGGS–LEFTWICH, Commissioner, State of NY Division of Housing & Community Renewal, and Hector Del Toro, Asst. Commissioner, Defendants.

No. CV 83–5625.

United States District Court, E.D. New York.

May 24, 1984.

Stein, Davidoff, Malito & Teitler, by Matthew Feigenbaum, New York City, for plaintiffs.

Robert Abrams, N.Y. Atty. Gen. by Melvyn Leventhal, Brenda Spears, Judith Kramer, Asst. Attys. Gen., New York City, for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

### I. FACTS

In this action plaintiffs, who are landlords, contend that defendants, by issuing certain Orders and Determinations pursuant to the Emergency Tenant Protection Act of 1974 ("ETPA"), N.Y.Unconsol.Law Section 8621 *et seq.* (McKinney Supp.1983–84), and the Emergency Tenant Protection Regulations ("Regulations"), 9 N.Y.C.R.R., Subtitle S, Chapter VIII, Part 2500 *et seq.*, have violated the prohibition against the impairment of contracts of U.S. Const. art. I, Section 10, cl. 1, as well as plaintiffs' right to due process and equal protection under U.S. Const. amend XIV, Section 1.

On December 29, 1982, the Village of Hempstead adopted a resolution pursuant to ETPA, Section 3(a), N.Y.Unconsol.Laws Section 8623(a) (McKinney Supp.1983–84), declaring the existence of an emergency on the ground that the housing vacancy rate was less than 5%. By virtue of this resolution, certain provisions of ETPA and the Regulations became effective on January 1, 1983 with respect to certain apartments owned by plaintiffs and located within the Village of Hempstead. Certain tenants of plaintiffs then applied to defendants for rent adjustment pursuant to ETPA, Section 9(b), N.Y.Unconsol.Laws Section 8629(b) (McKinney Supp.1983–84). Defendants, acting pursuant to said provision, then issued certain Orders and Determinations requiring plaintiffs to refund a portion of the rents which were received for periods of up to twenty-two months prior to January 1, 1983, and establishing new "fair market rents".[1] The defendants' Orders and Determinations were in most cases prepared and issued in Manhattan.

Plaintiffs have a number of proceedings (brought under N.Y.Civ.Prac.Law art. 78) challenging the Orders and Determinations pending in state court.

### II. VENUE

The first issue is whether venue is proper. Plaintiffs contend that since the rental property in question is located within this district, the claim arose within the Eastern District, so that the Eastern District is a proper venue pursuant to 28 U.S.C. Section 1391(b). Defendants argue that since the orders in question were issued by defendants primarily in the Southern District, the claim arose in the Southern District, which is the district in which all defendants are deemed to reside, so that the Southern District is the only proper venue pursuant to 28 U.S.C. Section 1391(b).

We find that the claim arose in the Eastern District and that the Eastern District is therefore a proper venue pursuant to 28 U.S.C. Section 1391(b). We find that the case's contacts with the Eastern District are stronger than those with the Southern

---

1. ETPA, Section 9(b), N.Y.Unconsol.Laws Section 8629(b) (McKinney Supp.1983–84) reads in pertinent part as follows:

    The tenant of a housing accomodation ... may file ... an application for adjustment of the initial legal regulated rent for such housing accomodation ... Where the state division of housing and community renewal has determined that the rent charged is in excess of the fair market rent it shall order a refund, of any excess paid since January first, nineteen hundred seventy-four or the date of the commencement of the tenancy, whichever is later. Such refund shall be made by the landlord in cash or as a credit against future rents over a period not in excess of six months.

District. Although the orders were physically issued in the Southern District, the orders concerned the rental of real property in the Eastern District. While the mere fact that a plaintiff will be economically harmed and that a plaintiff resides or does business in a given district does not necessarily mean that plaintiff's claim arises in such district, in the instant case there are several contacts with the Eastern District beyond the fact that the plaintiffs will suffer loss there. The real property is within the Eastern District. The tenants are within the Eastern District. The application of ETPA to the real property in question arose out of a resolution passed by a village in the Eastern District.

## III. ABSTENTION

The next question is whether this Court should abstain from hearing this case. The Supreme Court has explained that there are a number of situations in which a federal court should abstain from hearing a case. *Colorado River Water Conser. Dist. v. U.S.*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

### A. YOUNGER ABSTENTION

Federal courts should generally abstain when asked to enjoin certain types of state proceedings, especially criminal proceedings. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Here, however, no such injunction is sought so that *Younger* is inapplicable.

### B. PULLMAN ABSTENTION

Federal courts should likewise generally abstain where a federal constitutional issue might be mooted or presented in a different posture by a state court determination of pertinent state law. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In the instant case, however, the

state courts have already passed upon the validity of the legislation in question. In *Freeport Randall Co. v. Herman*, 56 N.Y.2d 832, 438 N.E.2d 99, 452 N.Y.S.2d 566 (1982), the New York Court of Appeals held that ETPA, insofar as it authorizes orders requiring landlords to refund rent payed prior to the enactment of a resolution declaring the existence of an emergency, does not violate the prohibition against the impairments of contracts of U.S. Const. art. I, Section 10, cl. 1. The Court reasoned that since the leases in question were entered into after the enactment of ETPA itself, such leases were subject to ETPA, notwithstanding the fact that such leases were entered into prior to the declaration of the existence of an emergency. Although the Court did not explicitly address itself to federal issues of due process and equal protection or to state constitutional issues, it may reasonably be inferred that the result would have been the same had the Court explicitly addressed these issues.[2] While it is of course theoretically possible that the state courts might supply a different answer today, the possibility is not a reasonable one, and it would be inequitable to force plaintiffs to proceed through the state courts before seeking relief from a federal court. Congress, in providing federal courts with general federal question jurisdiction, indicated its intention that the federal courts should in general be available as a first resort to persons with federal claims. Although considerations of comity and efficiency require that the federal courts on occasion abstain from hearing federal claims so that state courts may adjudicate issues of state law, no purpose is served by such abstention where the state courts have already spoken and abstention will serve merely to promote delay. It is not a sign of respect for the state courts to assume that once they have spoken upon a question they will readily change their answer. Consequent-

---

2. In *People, Off. of Rent Admin. v. Berry Estates,* 58 N.Y.2d 701, 444 N.E.2d 1324, 458 N.Y.S.2d 905 (1982), the New York Court of Appeals stated without explanation that ETPA, Section 9 "comports with constitutional principles of equal protection and due process." It is unclear, however, whether the Court of Appeals was addressing itself to the precise issues raised in the instant action.

ly, this Court should not abstain pursuant to the *Pullman* doctrine. *Kusper v. Pontikes*, 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1983).

■ It might be objected that, although it is fairly clear that the state courts would uphold the constitutionality of ETPA, it is nevertheless possible that this case could be disposed of through state court interpretation of details of the statute. For example, if a state court were to find that the orders and determinations in question were not based upon adequate evidence, plaintiff's federal constitutional claims would be rendered moot.

The weight of this objection is greatly reduced by the fact that state court interpretation of details of the statute (unlike a state court determination that the statute violates the state constitution) can only delay temporarily, but not avoid permanently, the necessity of federal court resolution of federal constitutional challenges to the statute. Even if U.S. District Courts abstain from hearing challenges to New York State administrative orders for rent refunds, a case must shortly emerge in which the state courts find that the challenged orders are consistent with every detail of state law, and in which the U.S. Supreme Court is required on appeal to address itself to federal constitutional challenges to the statute.[3] Consequently, the mere possibility that a state court might conceivably rule in plaintiffs' favor on the basis of interpretation of details of the statute does not justify the application of *Pullman* abstention in the instant case.

## C. BURFORD ABSTENTION

■ The Supreme Court has explained:

Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar ... It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. In *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), for example, the Court held that a suit seeking review of the reasonableness under Texas state law of a state commission's permit to drill oil wells should have been dismissed by the District Court. The reasonableness of the permit in that case was not of the transcendant importance, but review of reasonableness by the federal courts in that and future cases, where the state had established its own elaborate review system for dealing with the geological complexities of oil and gas fields, would have had an impermissibly disruptive effect on state policy for the management of those fields.

*Colorado River Water Conser. Dist. v. U.S.*, 424 U.S. 800, 814–15, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483 (1976).

It is clear that if federal courts were to routinely involve themselves in the intricacies of the implementation of New York's rent control program, the federal courts' actions would be disruptive of state efforts to establish a coherent policy. However, plaintiffs here do not ask this Court to involve itself in such intricacies. Rather plaintiffs seek a determination of whether ETPA and the Regulations are unconstitutional, at least insofar as they authorize

---

**3.** In *Benson Realty Corp. v. Koch*, 449 U.S. 1119, 101 S.Ct. 933, 67 L.Ed.2d 106 (1981), the Supreme Court dismissed without opinion for want of a substantial federal question an appeal from a New York Court of Appeals decision, 50 N.Y.2d 994, 409 N.E.2d 948, 431 N.Y.S.2d 475 (1980), upholding the constitutionality of the New York City Rent Control Laws. This case involved an action for a declaratory judgment that the New York City Rent Control Law as a whole is unconstitutional. The New York Court

of Appeals noted that plaintiff's papers contained only generalized conclusions and did not show specific harm to any particular landlord. The Supreme Court's dismissal of the appeal in this case cannot possibly be taken as a determination by the Supreme Court that the New York City Rent Control Law or any other rent control law is constitutional in its entirety and in every application. Indeed, the Supreme Court's dismissal may well have been based upon a finding that plaintiff lacked standing.

orders for the refunding of rent payed prior to the passage of a resolution declaring a state of emergency. Such a determination would involve an important question of federal constitutional law. Such a determination cannot disrupt New York's efforts to establish a coherent policy, for such a determination would resolve (one way or another) important questions regarding the validity of broad aspects of New York's rent control scheme, thereby laying a foundation for future efforts to establish a coherent policy. The making of such a determination must be distinguished from federal interference in the petty details or administration of a state policy.

Defendants have suggested that this Court might be forced to involve itself in the intricacies of the state rent control program in order to avoid the necessity of having to rule upon a major constitutional question. For example, it is agreed, this Court might find it necessary to determine whether the orders in question were based upon adequate evidence; if the orders were not based upon adequate evidence, the broader question of the validity of ETPA or of parts thereof would become moot. Several answers may be given.

First, all parties in the instant action agree for the purposes of this action that the orders and determinations in question are consistent with state law. In view of this absence of disagreement, it may well be that the general policy of avoiding constitutional issues may have to yield somewhat to the policy of avoiding resolution of issues which are not genuinely in controversy. Since plaintiffs concede for the purposes of this action that the orders in question are consistent with state law, it may well be proper for this Court to assume that the orders are consistent with state law and to address plaintiffs' federal constitutional claims without further ado. The desirability of avoiding state law issues which plaintiffs themselves do not choose to raise here is greatly strengthened by the fact that, as noted earlier, adjudication of state law issues in this case could only temporarily delay, but not permanently

avert, resolution by a federal court of federal constitutional challenges to ETPA.

Second, even assuming that this court decides to rule upon relatively minor questions of state law, such as whether the instant orders were supported by adequate evidence, there is a substantial probability that this court will find that the orders are consistent with state law. The Court would then proceed to resolve the federal issues raised in this case, thereby making it unlikely that this Court or other federal courts will in future be called upon to decide issues of state law regarding rent control. Our action in resolving questions of state law would therefore not likely lead to a general pattern of federal court involvement in the implementation of state rent control law.

Third, even assuming that this Court decides to rule upon questions of state law and rules in plaintiffs' favor on state grounds, this Court's action would still not lead to a general pattern of federal court involvement in the implementation of state rent control law. Within the very near future this Court or another federal court following our policy of non-abstention will be presented with a case in which the challenged orders and determinations are consistent with state law. The court would then resolve the federal constitutional challenges to ETPA, thereby making it unlikely that other federal courts will in future be called upon to decide issues of state law regarding rent control.

For the above reasons, we find that exercise of jurisdiction over this case by this Court would not be unduly disruptive of state efforts to establish a coherent policy regarding rent control, and that this Court should therefore not abstain pursuant to the *Burford* doctrine. *But see Berry Estates, Inc. v. New York*, No. CV 82–6465 (S.D.N.Y. March 20, 1983) (*Burford* abstention applied in case in which plaintiff landlords challenged portions of ETPA and Regulations dealing with circumstances under which landlords could be granted hardship rent increases).

**844**

### D. COLORADO WATER ABSTENTION

The Supreme Court has stated that there are other situations in which federal court abstention would be appropriate, but that "[o]nly the clearest of justifications will warrant dismissal." *Colorado Water Conser. Dist. v. U.S.*, 424 U.S. 800, 819, 96 S.Ct. 1236, 1247, 47 L.Ed.2d 483 (1976). We find no such clear justifications in the instant case.

### IV. CONCLUSION

For the above reasons, defendants' motion to dismiss is denied.

SO ORDERED.