■ COLONIAL ARMS APARTMENTS, Appellant, v VILLAGE OF MOUNT KISCO, Respondent. — In an action to declare void the resolution of the Board of Trustees of the Village of Mount Kisco, dated November 19, 1979, declaring a housing emergency with respect to buildings with 16 or more housing accommodations and applying the Emergency Tenant Protection Act thereto, plaintiff appeals from a judgment of the Supreme Court, Westchester County (Green, J.), dated March 23, 1984, which, upon denial of plaintiff's motion for summary judgment and granting of defendant's cross motion for summary judgment, dismissed the complaint.

Judgment reversed, on the law, without costs or disbursements, plaintiff's motion for summary judgment granted, defendant's cross motion for summary judgment denied, and it is declared that the resolution of the Board of Trustees of the Village of Mount Kisco, dated November 19, 1979, is void.

Subdivision a of section 3 of the Emergency Tenant Protection Act (ETPA, L 1974, ch 576, § 4) provides that "[a] declaration of emergency may be made as to any class of housing accommodations if the vacancy rate for the housing accommodations in such class * * * is not in excess of five percent". Here, at the close of the public hearing required by subdivision c of section 3 of the ETPA, the local governing body, the Board of Trustees of the Village of Mount Kisco, stated that by resolution, it "declares a housing emergency in the Village * * * based on a finding of a vacancy rate less than five percent". Then, upon such sole declaration, it stated that it "enacts the Emergency Tenant Protection Act of 1974, effective November 19, 1979 [the date of the public hearing and declaration], applicable to buildings containing sixteen or more housing units".

The failure of the Board of Trustees to make a finding that the vacancy rate for the class of housing accommodations of "buildings containing sixteen or more housing units" was less than 5%

requires nullification of the resolution. We further note that there were no inspections and no questionnaires sent to landlords in such classification or any other classification. In fact, there was no evidence at all of the vacancy rate of such classification and respondent admits that it has no knowledge thereof. Its sole stated reliance was upon a "Survey of Housing Conditions" prepared by its retained planner-consultants in connection with an unrelated housing assistance plan submitted by the village to the United States Department of Housing and Urban Development (HUD), stating there was a 3.2% vacancy rate as to rented accommodations in general. No one appeared at the public hearing to relate the manner in which the specific statistics stated in the "Survey" were obtained by the consultants, nor did anyone on behalf of the consultants submit any data thereon to Special Term. The papers submitted to HUD stated that "the sources utilized * * * include (1) the 1970 Census; (2) The Village Neighborhood Analysis, 1966; (3) Recent field surveys, undertaken by the Village staff and [the consultant firm of] Raymond, Parish, Pine & Weiner, Inc. of the Neighborhood Strategy Area in 1975, 1976 and 1977". There was no showing of how the original source materials were obtained, weighted and adjusted. Further, it treated all rentals as one class, distinguishing it only from the class of owner-occupied housing units.

There was, in the instant case, no "good-faith study * * * based on precise data" (*Spring Val. Gardens Assoc. v Marrero*, 100 AD2d 93, 101), nor "a commonsense approach" (p 104) to the obtainment of such data. Clearly the nonspecific and conclusory hearsay papers submitted to HUD fall far short of any proper basis for a finding as to the vacancy rate of the chosen classification, if indeed such finding has been made.

We add that the village's failure to give notice of adoption of its resolution, either by publication or personal service, as required by its then extant local law (Local Law 1953, No. 1) is an independent reason for the nonapplicability of the resolution to plaintiff (see 5 McQuillin, Municipal Corporations [3d ed], § 15.39). Thompson, J. P., Weinstein, Rubin and Lawrence, JJ., concur.