Matter of Hudson Val. Prop. Owners Assn. Inc. v City of Kingston N.Y. (2024 NY Slip Op 01593)

Matter of Hudson Val. Prop. Owners Assn. Inc. v City of Kingston N.Y.

2024 NY Slip Op 01593

Decided on March 21, 2024

Appellate Division, Third Department

Egan Jr., J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 21, 2024

CV-23-0327

[*1]In the Matter of Hudson Valley Property Owners Association Inc. et al., Appellants-Respondents,
v
City of Kingston New York et al., Respondents, and Kingston New York Rent Guidelines Board et al., Respondents-Appellants.

Calendar Date:January 19, 2024

Before: Egan Jr., J.P., Clark, Pritzker, Fisher and Powers, JJ.

Belkin Burden Goldman, LLP, New York City (Magda L. Cruz of counsel), for appellants-respondents.
Barbara Graves-Poller, Corporation Counsel, Kingston, for respondents.
Letitia James, Attorney General, Buffalo (Sarah L. Rosenbluth of counsel), for Kingston New York Rent Guidelines Board and another, respondents-appellants.
Legal Services of the Hudson Valley, Yonkers (Marcie Kobak of counsel), for Citizen Action of New York and others, respondents-appellants.
J. Wade Beltramo, New York State Conference of Mayors and Municipal Officials, Albany, for New York State Conference of Mayors and Municipal Officials, amicus curiae.
Collins Dobkin & Miller LLP, New York City (Timothy L. Collins of counsel), for Albany Housing for All and others, amici curiae.

Egan Jr., J.P.
Cross-appeals from a judgment of the Supreme Court (David M. Gandin, J.), entered February 10, 2023 in Ulster County, which partially granted petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, (1) to annul a determination of respondent City of Kingston Common Council declaring a public housing emergency, and (2) to review a determination of respondent Kingston New York Rent Guidelines Board implementing certain guidelines.
The Emergency Tenant Protection Act of 1974 (ETPA) (McKinney's Uncons Laws of NY § 8621 et seq., as added by L 1974, ch 576, § 4) was enacted to "permit[ ] regulation of residential rents [for many living accommodations] upon the declaration of a housing emergency in New York City" or a similar declaration by municipalities in Nassau County, Westchester County or Rockland County (Matter of Gracecor Realty Co. v Hargrove, 90 NY2d 350, 355 [1997]; see Uncons Laws former § 8634, as added by L 1974, ch 576, § 4, § 14). The ETPA specifically provided, in relevant part, that the governing body of a municipality in Nassau County, Westchester County or Rockland County could make "[a] declaration of emergency . . . as to any class of housing accommodations if the vacancy rate for the housing accommodations in such class within such municipality is not in excess of five percent" (Uncons Laws § 8623 [a]). Thereafter, a county rent guidelines board, "consist[ing] of nine members appointed by the commissioner of housing and community renewal upon recommendation of the county legislature," would, among other things, establish annual guidelines for rent adjustments at the impacted accommodations until the housing emergency had abated or ended (Uncons Laws § 8624 [a]; see Uncons Laws § 8623).
Pursuant to the Housing Stability and Tenant Protection Act of 2019 (L 2019, ch 36 [hereinafter HSTPA]), the Legislature allowed municipalities statewide to opt in to the rent adjustment scheme created by the ETPA upon a declaration of emergency due to a housing vacancy rate of 5% or less (see Uncons Laws § 8634 [b], as amended by L 2019, ch 36, § 1, part G, § 3). HSTPA also provided that "a rent guidelines board created subsequent to the effective date of [HSTPA] shall consist of nine members appointed by the commissioner of housing and community renewal upon recommendations of the local legislative body of each city having a population of less than one million or town or village which has determined the existence of an emergency" (Uncons Laws § 8624 [a], as amended by L 2019, ch 36, § 1, part G, § 5; see Uncons Laws § 8624 [a-1]).
After HSTPA took effect, respondent City of Kingston (hereinafter the City) retained the Center for Governmental Research in September 2019 to assess the housing vacancy rate for rental properties in the City that were potentially subject to ETPA in that they contained six or more units and were constructed before 1974 (see Uncons Laws § 8625 [a] [4], [5]; 9 NYCRR [*2]2500.9 [d], [e]). The result was a February 2020 report finding a net vacancy rate of 6.7% for those properties, too high to invoke the ETPA. In 2022, after the housing situation in the City deteriorated due to an influx of residents moving upstate from New York City during the COVID-19 pandemic, the City tasked the director of its Office of Housing Initiatives, Bartek Starodaj, to conduct a new housing vacancy study. Following a survey that used nearly identical procedures to those used in the 2020 study and focused upon the same group of properties, the Office of Housing Initiatives issued a report in July 2022 finding that the net vacancy rate for those properties had fallen below the 5% threshold to 1.57%.
Respondent City of Kingston Common Council proceeded to adopt Resolution 144 of 2022 (hereinafter the emergency declaration) in July 2022, finding that the net vacancy rate for the relevant properties had fallen to 1.57%, declaring an emergency within the meaning of the ETPA, and applying "the provisions of the ETPA . . . to buildings in the City . . . containing six or more rental units completed prior to January 1, 1974." After the emergency declaration became effective on August 1, 2022 (see Uncons Laws § 8626 [a]), the Commissioner of Housing and Community Renewal appointed nine individuals, recommended by the Common Council, to respondent Kingston New York Rent Guidelines Board (hereinafter the Board) (see Uncons Laws § 8624 [a]). On November 9, 2022, following a series of public meetings and hearings, the Board voted to adopt an annual rent adjustment guideline and a fair market rent guideline for the properties subject to the emergency declaration. The fair market rent guideline provided that a tenant could file a fair market rent appeal with respondent Division of Housing and Community Renewal (hereinafter DHCR) to seek a refund if his or her rent increased by more than 16% between January 1, 2019 and July 30, 2022; the adjustment guideline, in turn, required that rent charged for one- and two-year leases commencing between August 1, 2022 and September 30, 2023 be reduced by 15% from the base rate.
Petitioners, owners of multifamily rental properties in the City and an association of property owners, commenced this combined CPLR article 78 proceeding and action for declaratory judgment in October 2022 to challenge the emergency declaration. Following the issuance of the guidelines by the Board in November 2022, petitioners amended the petition to assert challenges to the validity of the guidelines as well.[FN1] The City and the Common Council (hereinafter collectively referred to as the municipal respondents), as well as DHCR and the Board, served answers. Meanwhile, respondents Citizen Action of New York, For the Many, Amanda Treasure and Lisa Lerner (hereinafter collectively referred to as the Citizen Action respondents) moved to intervene as respondents. Supreme Court issued a judgment in February 2023 in which it granted the motion [*3]to intervene and partially granted the petition, determining that the Common Council had properly declared a public housing emergency, but that the fair market rent determination and rent adjustment guideline adopted by the Board exceeded its authority under ETPA. Supreme Court accordingly vacated the Board's determination and remitted so that it could establish new guidelines. Petitioners appeal, while the Citizen Action respondents and the Board separately cross-appeal.
Upon petitioners' appeal, they primarily challenge the factual findings underpinning the emergency declaration and, in particular, the finding that the vacancy rate was less than 5% as required. Petitioners correctly note that, although a presumption of validity attaches to legislative enactments, "that presumption cannot be applied in a case[, like the emergency declaration,] . . . where the implementing legislation requires the local legislative body to first make a particular factual finding" (Spring Val. Gardens Assoc. v Marrero, 68 NY2d 627, 629 [1986]). Nevertheless, because the issuance of an emergency declaration under the ETPA is a discretionary matter for a municipality (see Roslyn Garden Assoc. v Board of Trustees of Inc. Vil. of Roslyn, 190 AD2d 722, 723 [2d Dept 1993]), petitioners bore the burden of establishing that the Common Council's "determination lacked a rational basis or was arbitrary and capricious" (Matter of Darwak v City of New York, 188 AD3d 1511, 1515 [3d Dept 2020], lv denied 36 NY3d 913 [2021]; see CPLR 7803 [3]; Matter of Saratoga Lake Protection & Improvement Dist. v Department of Pub. Works of City of Saratoga Springs, 46 AD3d 979, 983 [3d Dept 2007], lv denied 10 NY3d 706 [2008]). We accordingly assess whether petitioners met that burden and, in so doing, note that the emergency declaration did not need to be based upon the results of "a 'complete survey' of all housing," but did need to flow from "a common sense approach, and . . . 'a good faith study' derived from 'precise data' " (Executive Towers at Lido, LLC v City of Long Beach, 37 AD3d 650, 652 [2d Dept 2007], lv denied 9 NY3d 813 [2007], quoting Spring Val. Gardens Assoc. v Marrero, 100 AD2d 93, 98, 101 [2d Dept 1984], affd 68 NY2d 627 [1986]).[FN2]
In that regard, the record contains the July 2022 report, several affidavits from Starodaj detailing how the study leading to that report was conducted, and supporting documentation. This proof reflects that the procedures used to conduct the study mirrored those used in the 2020 study, which were themselves based upon prior ETPA rental vacancy rate studies in other communities. The properties containing six or more rental units that were constructed before 1974 were identified based upon information from the City Assessor's office, and surveys were sent to the owners of those properties via certified mail in April 2022. The survey asked the owners for information about, among other things, the total number of units in their rental property, the [*4]number of units that were occupied, and the number that were unavailable to rent. The owners were further advised that they could provide the requested information via mail, email, telephone or by completing an online form prior to May 2, 2022 and that, if they missed that deadline, it would be assumed that there were no vacancies at their property. The initial mailings were also tracked and, if it appeared that they had not been delivered, efforts were made to contact the owners by, among other things, visiting the properties themselves to obtain owner contact information from the tenants and by reaching out to the owners via telephone, email or mailing at different addresses. The result of those efforts was survey responses from the owners of 59 properties with 1,270 rental units — which Starodaj stated constituted approximately 40.7% of the properties, but 71.7% of the actual rental units, thereby constituting a substantial majority of the units in the study group — reflecting that only 20 of those units were vacant despite being available to rent, equivalent to a vacancy rate of 1.57%. The owners of five properties did not provide the requested information, and the 33 additional units at those properties were excluded from the calculation. The 2022 report made clear, however, that the vacancy rate would have remained below the 5% threshold for ETPA purposes even if those 33 units had been counted as vacant.
The foregoing reflects that the municipal respondents took "a common sense approach, and [based the emergency declaration upon] a good faith study derived from precise data" (Executive Towers at Lido, LLC v City of Long Beach, 37 AD3d at 652 [internal quotation marks and citation omitted]). Petitioners attempted to cast doubt on the results of the 2022 study in various respects, pointing to perceived flaws in how the 2022 study was conducted and presenting the results of their own study of the housing situation, made after the completion of the 2022 study, indicating that the net vacancy rate of rental accommodations in the City was 6.22%. Starodaj responded to petitioners' contentions in detail, however, describing how petitioners simply misunderstood the methodology behind the 2022 study in some respects, explaining why certain properties were not reported as having any vacant units or were excluded from the study, and making clear that, to the limited extent that petitioners pointed to actual errors in the study that required correction, the data collected still reflected that the net vacancy rate was lower than 5%. The foregoing, as required, constituted "data in an organized and coherent format" which responded to petitioners' "specific claims," and it left no doubt that an adequate study had been placed before the Common Council at the time it made an emergency declaration in Resolution 144 of 2022 (id.; compare Colonial Arms Apts. v Village of Mount Kisco, 104 AD2d 964, 965 [2d Dept 1984], appeal dismissed 64 NY2d 948 [1985]). The 2022 [*5]study may not have been perfect, in other words, but the record leaves no doubt that it was conducted in good faith and delivered results that were based upon precise data. It follows that the Common Council could, and did, reasonably rely upon its results to determine that the net vacancy rate for certain properties in the City had fallen below the 5% threshold required to invoke the provisions of ETPA. As such, Supreme Court correctly determined that the adoption of the emergency declaration was proper.
Turning to the cross-appeals, the Board and the Citizen Action respondents argue that Supreme Court erred in determining that the rent adjustment guideline, as well as the fair market rate, adopted by the Board exceeded its authority under ETPA. We agree. First, the Board set an adjustment guideline by imposing a 15% reduction from the initial legal regulated or "base" rent for one- and two-year leases commencing between August 1, 2022 and September 30, 2023. This was well within the authority of the Board, which is empowered by ETPA to "establish annual guidelines for rent adjustments" (Uncons Laws § 8624 [b]). Nothing in the applicable statutory language explicitly requires that the Board adjust the rent upward rather than downward as petitioners claim, and petitioners' argument as to why such a requirement should be implied is less than compelling. Moreover, contrary to the apparent conclusion of Supreme Court, the Board was not obligated to conduct a case-by-case assessment of rental units in setting the adjustment guideline, as the statute provides that the adjustment "may be applicable for the entire" jurisdiction and is varied at the Board's discretion (Uncons Laws § 8624 [b]).
The Board further set a fair market rate for rent at 116% of the rent charged on January 1, 2019, meaning a rent increase of 16% or less between January 1, 2019 and July 31, 2022. This guideline relates to the statutory directive that the Board "promulgate as soon as practicable after its creation guidelines for the determination of fair market rents for housing accommodations," which may then be used by tenants to "appl[y] [to DHCR] for adjustment of the initial legal regulated rent" and obtain a refund if "such rent is in excess of the fair market rent" (Uncons Laws § 8629 [b]). As with the rental adjustment guideline, the Board was not obliged to conduct a case-by-case assessment to specify a fair market rent guideline. A tenant or landlord may indeed apply to DHCR for a modification of initial legal regulated rent upon a showing "that the presence of unique or peculiar circumstances materially affecting [that] rent has resulted in a rent which is substantially different from the rents generally prevailing in the same area for substantially similar housing accommodations" (Uncons Laws § 8629 [a]). As the Court of Appeals has recognized, however, that standard "has nothing to do with local guidelines" themselves, which are relied upon by DHCR in the separate application [*6]by a tenant to modify the initial legal regulated rent upon a showing that it exceeds the fair market rate determination of the Board (Matter of Freeport Randall Co. v Herman, 56 NY2d 832, 835 [1982]; see Uncons Laws § 8629 [b]; compare Matter of Bradcord Assoc. v Conciliation & Appeals Bd. of City of N.Y., 52 AD2d 569, 569-570 [1st Dept 1976]).
Finally, although the fair market rent guideline was aimed against an increase in rent of more than 16% between January 1, 2019 and July 31, 2022, and the emergency declaration did not take effect until August 1, 2022, such does not compel the conclusion that it had an improper retroactive effect. Upon a fair market rate appeal by a tenant, the ETPA explicitly permits DHCR to order a refund of any rent charged in excess of the fair market rate "since January [1, 1974] or the date of the commencement of the tenancy, whichever is later," even if those occurrences predated the emergency declaration that rendered the ETPA applicable (Uncons Laws § 8629 [b]). The Court of Appeals has already determined that this retroactive effect was proper in that landlords were on notice that "[e]very lease entered into after the effective date of the ETPA was . . . subject to the power of the State reserved by [Uncons Laws § 8629 (b)] to itself and to the municipalities authorized by [Uncons Laws § 8623 (3) (a)] to determine the emergency need for controlling rents within its borders . . . , to require that rent paid under such a lease be refunded to the extent that the rent reserved exceeded the fair market rent as thereafter determined" (Matter of Freeport Randall Co. v Herman, 56 NY2d at 834; see Wendell Terrace Apts. v Scruggs-Leftwich, 588 F Supp 839, 841 [ED NY 1984]). Petitioners point out that they were not on notice that their rental properties were potentially subject to the provisions of ETPA in 1974 since the City was not entitled to invoke those provisions until the relevant provisions of HSTPA took effect in June 2019. Indeed, the Board and DHCR concede that there would be serious constitutional concerns if refunds were ordered for rent paid prior to the effective date of HSTPA. That said, DHCR is prohibited from issuing a refund order "relat[ing] to a period more than two years prior to the local effective date" and, because the emergency declaration took effect on August 1, 2022, DHCR could not order any refunds for rent paid before the 2019 effective date of HSTPA (9 NYCRR 2502.3 [a] [2]). As petitioners cannot be ordered to pay refunds for rent paid before they were aware of their potential exposure under ETPA, whatever retroactive impact the fair market rent determination might have was permissible (compare Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 349-350 [2020]). Thus, as we are satisfied that the Board's guidelines were made within the authority granted to them by ETPA and raise no other legal concerns, we modify the judgment of Supreme Court to [*7]declare them valid.
To the extent that the parties' arguments have not been addressed above and are properly before us, they have been examined and are lacking in merit.
Clark, Pritzker, Fisher and Powers, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as declared that the November 9, 2022 determination of respondent Kingston New York Rent Guidelines Board was invalid and remitted for the purpose of establishing new guidelines; said determination is declared to be valid; and, as so modified, affirmed.

Footnotes

Footnote 1: Supreme Court enjoined, among other things, the guidelines from going into effect during the pendency of this matter. As a result, the guidelines were never reduced to writing and filed with DHCR following their adoption by the Board.

Footnote 2: To the extent that the municipal respondents argue that the Legislature jettisoned this standard for assessing the sufficiency of the survey when it enacted HSTPA in 2019, we are unpersuaded. The Legislature is presumed to be familiar with decisional law interpreting its statutes and, to the extent that it does not take action, accepting of that interpretation (see Matter of Knight-Ridder Broadcasting v Greenberg, 70 NY2d 151, 157 [1987]). HSTPA was silent on prior case law interpreting ETPA and, in the absence of a "clear manifestation" of an intent to disturb those holdings, we will not impute one (id.; see Matter of Estate of Youngjohn v Berry Plastics Corp., 36 NY3d 595, 606-607 [2021]).